**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

YASIR QAHTAN SAUD                           DOCKET NO. 2:25-cv-0325

VERSUS                                       JUDGE JAMES D. CAIN, JR.

FELIPE MARTINEZ JR., ET AL.                  MAGISTRATE JUDGE LEBLANC

**REPORT AND RECOMMENDATION**

Before the court are the original and amended civil rights complaints (docs. 1, 4, 8, 10, 16) filed pursuant to *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), by Yasir Qahtan Saud, who is proceeding pro se and *in forma pauperis* in this matter. Saud is an inmate in the custody of the Bureau of Prisons ("BOP"), currently incarcerated at the Federal Correctional Institution in Oakdale, Louisiana ("FCIO-II"). He names the Federal Bureau of Prisons, Warden Felipe Martinez, Jr., Acting Warden Mr. Pate, Mr. Eggins, Mr. Earl, FCIO-II, John and/or Jane Doe Medical Staff, and Unknown Pill Line Nurse as defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this Court. For the reasons stated below, it is recommended that the complaint be **DISMISSED WITH PREJUDICE**.

**I.**
**BACKGROUND**

Plaintiff complains that on November 25, 2024, he was bitten on his right arm by an insect (he presumes a spider, mosquito or ant) and the bite became red, swollen and infected, causing "significant pain and discomfort." Doc. 4, p. 3. On December 5, 2024, he sought medical attention at the clinic, but it was closed and the unknown pill line nurse, named as a defendant, refused to provide medical care other than to offer a bandage, as his wound was bleeding. Doc. 4, p. 3, ¶ 2;

*see also* doc. 16, p. 3, ¶ 2. On December 6, 2024, he returned to the clinic where a nurse prescribed Trimethoprim-Sulfathiazole 800 mg for 10 days. Doc. 4, p. 3, ¶ 3. Plaintiff contends that despite this treatment, the infection spread to his arm, under his shoulder and to his beard. *Id*. On December 16, 2024, Plaintiff was informed by Mr. Earl, a medical provider at FCIO-II, that he would see a dermatologist, but alleges that no specialist appointment was made. Doc. 16, p. 3, ¶ 3.

Plaintiff complains that he was "repeatedly prescribed ineffective antibiotics, including Clindamycin 300 mg and Amoxicillin, which caused severe side effects (rash, severe allergic reaction, diarrhea), but failed to resolve this infection," and that no medical tests were conducted. Doc. 4, p. 3, ¶ 5. In July 2025, after "months of ineffective treatment," he states that Mr. Earl performed minor surgery in the prison clinic to remove a red growth (infection area) from Plaintiff's right arm, leaving a large permanent scar." Doc. 16, p. 3, ¶ 4.

In addition to complaints of deliberate indifference to his medical condition, Plaintiff raises claims related to the grievance procedures at FCIO-II, alleging that between January and March 2025 he made at least five requests for grievance forms from Mr. Eggins, the Unit Case Manager, and others and was consistently told to "come back tomorrow" or his requests were ignored, and no forms were provided. Doc. 16, p. 3, ¶ 5. Moreover, grievances/letters to Warden Martinez and Acting Warden Pate were also ignored. *Id*. at ¶ 6.

Plaintiff also complains about unsafe and unsanitary living conditions. Specifically, he submits that FCIO-II is "infested with insects, including spiders, ants, and flies, due to malfunctioning heating and cooling system." Doc. 4, p. 3. "The main door to the housing unit remains open, allowing insects to infiltrate sleeping and eating areas." *Id*. Only four out of ten

showers in the facility are in service and these showers have significant leaks causing rust and excessive humidity (*id.* at p. 4) and the inmates have been served spoiled milk (doc. 16, p. 4, ¶ 7).

Plaintiff makes allegations of denial of meaningful access to the Courts, stating that there is only one telephone in his Unit, that computers no longer provide access to the legal library and that prison staff frequently tell inmates that they do not have any certified mail slips.  Doc. 16, p. 4, ¶ 8.

Finally, he alleges discrimination by supervisory staff who have told inmates, "This institution is for immigrants and you have no rights."  *Id*. at ¶ 9.

**II.**
**LAW & ANALYSIS**

**A.  Frivolity Review**

Saud has been granted leave to proceed in forma pauperis in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

### B.  Section 1983/Bivens

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A *Bivens* action is the counterpart of a suit brought under § 1983 for those acting under color of federal law.[1] *E.g.*, *Abate v. Southern Pacific Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993). To hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S.Ct. 2250, 2254-2255 (1988).

### C.  Improper Defendants

#### 1.  *Warden Martinez & Acting Warden Mr. Pate*

Plaintiff has named Warden Martinez as a defendant because "he is responsible for inmate safety and received plaintiff's written complaints but took no corrective action."  Doc. 16, p. 2, ¶ 2.  To the extent he is named because he is "responsible for inmate safety," i.e., in his supervisory capacity, claims against Warden Martinez should be dismissed.  "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak*, Tex., 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 113 S.Ct. 2443 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied,* 115 S.Ct. 1957 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d

---

[1] *Bivens*, however, is more limited in scope than an action under § 1983 and has only been expressly extended to Fourth, Fifth, and Eighth Amendment violations. *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017); *see also Butts v. Martin*, 877 F.3d 571, 587–88 (5th Cir. 2017).

381, 382 (5th Cir.), *cert. denied*, 104 S.Ct. 248 (1983). In other words, to the extent that plaintiff seeks to name a supervisory official as a defendant, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by those defendants. Plaintiff has failed to do so and, as such, claims against Warden Martinez in his supervisory capacity should be dismissed.

To the extent Warden Martinez and Acting Warden Pate are named because they failed to respond to plaintiff's written complaints (*id*. at ¶ 2, ¶ 3), these claims should also be dismissed. A mere failure to respond to a grievance letter does not rise to the required level of personal involvement for liability. *See Amir-Sharif v. Valdez*, 2007 U.S. Dist. LEXIS 46524,2007 WL 1791266, slip op. at *2 (N.D. Tex. June 6, 2007) (holding that no liability under § 1983 had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement); *Praylor v. Partridge*, 2005 WL 1528690, slip op. at *2 (N.D. Tex. June 28, 2005) (same); *Anderson v. Pratt*, 2002 U.S. Dist. LEXIS 8576, 2002 WL 1159980, slip op. at *3 (N.D. Tex. May 29, 2002).

### 2. *FCIO-II*

It is settled law that a federal prison like FCIO-II is not a legal entity amenable to suit. *See Duhaney v. Gusman,* No. Civ. A. 06-3518, 2009 U.S. Dist. LEXIS 47096, 2009 WL 1607915, at *3 (E.D. La. June 2, 2009) (holding FDC-Houston is not a legal entity amenable to suit); *Christy v. Federal Bureau of Prisons*, No. Civ. A. 09-3044-SAC, 2009 U.S. Dist. LEXIS 29782, 2009 WL 961388 at *2 (D. Kan. Apr. 8, 2009) (holding U.S.P. Leavenworth is not a legal entity suable for civil rights violations) (citing *Marsden v. Federal Bureau of Prisons*, 856 F. Supp. 832, 836 (S.D. N.Y. 1994)); *Nolan v. Hamidullah*, 4:07-1141-JFA-TER, 2007 U.S. Dist. LEXIS 43443, 2007 WL 1726447 at *3 (D.S.C. Jun. 12, 2007) (holding FCI-Estill is not a proper party in a *Bivens* action).

### 3. Federal Bureau of Prisons

The Federal Bureau of Prisons is an agency and not an individual officer of the sort amenable to suit under *Bivens*. *See Federal Deposit Ins. Corp. v. Meyer*, 114 S. Ct. 996, 1005-06 (1984) (noting that *Bivens* applies to individual agents, not agencies). A plaintiff may not bring a suit for damages against a federal agency under *Bivens*. *See id*.

## D. Claims

### 1. Medical Care

The gravamen of Plaintiff's complaint is that FCIO-II officials denied him proper medical care following an insect bite. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). Accordingly, the Eighth Amendment imposes on prison officials a duty to ensure that inmates' basic needs, including medical care, are met. *Farmer v. Brennan*, 114 S.Ct. 1970 (1994). It also obliges officials to "take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotations omitted).

To show a violation under this theory, the inmate must allege a sufficiently serious deprivation and a sufficiently culpable state of mind on the part of the prison official - that is, that the official acted with deliberate indifference to inmate health or safety. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). Under this theory, a prison official is not liable unless he both knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 114 S.Ct. at 1977-79. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;" thus the test is "[s]ubjective recklessness" as used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (quoting *Farmer*, 114 S.Ct. at 1980).

Saud has made no such showing. As is documented throughout his complaint, he was seen and treated by medical professionals regarding the insect bite. He concedes that he underwent "months" of treatment, albeit ineffective. Doc. 16, p. 3. He was given numerous medications and ultimately underwent a medical procedure. *Id.* He does not contend that he was not given any medical care, only that he is entitled to better medical care.

While Saud may disagree with some aspects of his treatment, "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference, "absent exceptional circumstances." *Moreno v. Kwarting*, 763 Fed. Appx. 368, 369 (5th Cir. 2019) (*citing Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). The United States Fifth Circuit Court of Appeals has stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not desirability. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981). Moreover, the fact that a plaintiff continues to suffer pain is insufficient to establish that a constitutional violation has occurred. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). That a plaintiff does not believe his medical treatment was as good as it should have been is not a cognizable complaint. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Id.* Accordingly, Plaintiff's claims that FCIO-II officials failed to provide adequate medical care should be dismissed.

### 2. *Grievances*

Saud also alleges that his grievances were not handled satisfactorily by defendant Eggins or other FCIO-II officials. Allegations of dissatisfaction with the investigation and/or rejecting of grievances, however, fails to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 97 S.Ct. 2532 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not

constitutionally required); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances). Accordingly, this claim lacks an arguable basis in law and is thus frivolous.

### 3. *Discrimination*

Plaintiff's claim of discrimination by FCIO-II staff who made comments regarding his citizenship should be dismissed.  While inmates have the "constitutional right [under equal protection] to be free from racial discrimination," *Bentley v. Beck*, 625 F.2d 70, 71 (5th Cir. 1980); *see also Lee v. Washington*, 88 S.Ct. 994 (1968), to succeed on an equal protection claim, a plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir. 2004) (citing *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992)). A plaintiff must allege the "existence of purposeful discrimination, which implies that the decision maker selected a particular course of action at least in part because of the adverse impact it would have on an identifiable group." *Cotton v. Booker*, 166 F.3d 341, 1998 WL 912201 at *1 (5th Cir. 1998) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir. 1997)).

Plaintiff fails to allege any facts to support his claim of discrimination or that prisoners of any other ethnicity were treated differently than similarly situated prisoners of Plaintiff's ethnicity.  The mere suspicion or belief that one has suffered race-based discrimination is insufficient to maintain this action. *See Taylor v. Johnson*, 257 F.3d 470, 474 (5th Cir. 2001) (dismissing civil rights complaint because inmate did not allege any facts to demonstrate

prison officials "purposefully intended to discriminate against him as a member of an identifiable group"). Accordingly, this claim should be dismissed.

### 4. *Remaining Causes of Actions under Bivens*

The United States Supreme Court recently restated that expanding causes of action under *Bivens* is "a 'disfavored' judicial activity." *Hernandez v. Mesa*, 140 S.Ct. 735, 742 (2020) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). Separation-of-powers principles are central to the analysis of whether *Bivens* should be expanded. The question is whether Congress or the courts should authorize a damages lawsuit. *Abbasi*, 137 S.Ct. at 1857. Mindful of separation-of-powers interests, the Court developed a two-part test. *Id.* at 1859-60. First, a court must ask whether a plaintiff's claim falls into one of three existing *Bivens* causes of action. *Oliva v. Nivar*, 973 F.3d 438, 441 (5th Cir 2020). Then, if a case does not fall into one of those causes of action, a court must ask whether there are "special factors counseling hesitation" in extending the remedy available under *Bivens*. *Abbasi*, 137 S.Ct. at 1857. The special factors inquiry concentrates on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the benefits of allowing a damages action to proceed." *Abbasi*, 137 S.Ct. at 1858. These factors include whether Congress has legislated on the right at issue. *Id.* "[I]f there is an alternative remedy structure present in a certain case," the existence of that process "alone may limit the power of the judiciary to infer a new *Bivens* cause of action." *Id.* Courts are also to consider separation-of-powers concerns. *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018) (*en banc*). "[T]he only relevant threshold-that a factor counsel hesitation-is remarkably low." *Id.* at 823.

The three existing *Bivens* causes of action are as follows:

(1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 91 S.Ct. at 1999;

(2)     discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, [99 S.Ct. 2264 (1979)]; and

(3)     failure to provide medical attention to an asthmatic person in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, [100 S.Ct. 1468 (1980)].

*Oliva*, 973 F.3d at 442. "Virtually everything else is a 'new context.'" *Id.* (quoting *Abbasi*, 137 S.Ct. at 1865). Indeed, the case need only be "different in [one] meaningful way from previous *Bivens* cases" for the "context [to be] new." *Abbasi*, 137 S. Ct. at 1859. "[E]ven a modest extension [of *Bivens*] is still an extension." *Abbasi*, 137 S. Ct. at 1864.

### a.     Conditions of Confinement

Plaintiff claims that he has been subjected to unconstitutional conditions of confinement, including insect-infested facilities, leaking showers, and spoiled milk.  A claim that an inmate was subjected to unconstitutional conditions of confinement presents a new *Bivens* context because the Supreme Court has not previously recognized an implied cause of action for this type of claim. *Mammana v. Barben*, 856 F. App'x 411, 413-414 (3rd Cir. 2021); *Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019); *Silva v. Ward*, No. 1:16cv185, 2019 WL 4721052, at *3-4 (W.D. Wis. Sept. 26, 2019). The claim is different in a meaningful way from the claims recognized in *Bivens, Davis* and *Carlson*. Specifically, this Eighth Amendment claim is a different context from the Eighth Amendment medical claim recognized in *Carlson. Sebolt v. Tyndall*, No. 19cv429, 2021 WL 4948959, at *3 (N.D. Ind. Oct, 25, 2021); *Thomas v. Matevousian*, No. 1:17cv1592. 2019 WL 266323, at * 1 (E.D. Ca. Jan. 18, 2019). A claim arises in a new context even if it is based on the same constitutional provision as a case in which a damages remedy has previously been recognized. *Hernandez*, 140 S.Ct. at 743.

In addition, there are special factors counseling hesitation. As the United States Fifth Circuit Court of Appeals stated in *Watkins v. Martinez*, No. 20-20781, 2022 WL 278376, at *1 (5th Cir. Jan. 31, 2022), the Federal Tort Claims Act and the Administrative Remedy Program of the Bureau of Prisons already provide methods of relief.  Further, like in *Watkins v. Three Admin. Remedy Coordinators of the Bureau of Prisons*, 998 F.3d 682, 685 (5th Cir. 2021), the Prison Litigation Reform Act counsels hesitation as Congress, when it had an opportunity to do so, failed to provide for a damages remedy against federal employees who expose inmates to unconstitutional conditions of confinement.

If any special factor exists, a court must refrain from expanding *Bivens. Canada v. U. S.*, 950 F.3d 299, 309 (5th Cir. 2020). Here, more than one factor counsels hesitation with respect to expanding the remedy available under *Bivens* to an unconstitutional condition of confinement claim is unwarranted. *Mammana*, 856 F. App'x at 416; *Sebolt*, at *4; *Thomas*, at *2.  As such, a claim under the Eighth Amendment of exposure to unconstitutional conditions of confinement may not be brought pursuant to *Bivens*. Plaintiff has therefore failed to state a claim upon which relief may be granted.

### b.    Access to Courts

Plaintiff's claim of denial of access to courts yields the same result.  "The relief available under *Bivens* has not been extended to a claim of being denied access to courts." *Alcantara v. Trujillo,* No. 26-cv-821, 2026 U.S. Dist. LEXIS 116293, *4 (W.D. Tex. May 27, 2026) (citing *Schaefer v. Dir. of Fed. Bureau of Prisons,* No. 22-cv-436, 2025 U.S. Dist. LEXIS 269767, 2025 WL 3903961, at *4 (E.D. Tex. Dec. 8, 2025) (first citing *Garces v. Biery*, No. 25-50648, 2025 U.S. App. LEXIS 28475, 2025 WL 3034705, at *2 (5th Cir. Oct. 30, 2025), and then citing *Dowell v. Kobayashi,* No. 22-cv-4886, 2023 U.S. Dist. LEXIS 30761, 2023 WL 2227712, at *3 (S.D. Tex.

Feb. 24, 2023)), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 2054, 2026 WL 59329 (Jan. 6, 2026)).  Accordingly, this claim has no merit.

### III.
#### CONCLUSION

For the reasons stated above, Saud cannot obtain the relief sought in this matter. Accordingly, **IT IS RECOMMENDED** that this matter be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (doc. 14) be **DENIED** as **MOOT**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 15th day of June, 2026.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE